1          **UNITED STATES DISTRICT COURT**
           **DISTRICT OF NORTH DAKOTA**
2             **SOUTHEASTERN DIVISION**

3    - - - - - - - - - - - - - - - -

4    United States of America,      )
                                    )
5                    Plaintiff,     )
                                    )
6          vs.                      )     **FILE NO. 3:08-cr-28**
                                    )
7    Adenkunle Olufemi Adetiloye,   )
                                    )
8                    Defendant.     )
                                    )
9    - - - - - - - - - - - - - - - -

10

11

12

13               **T R A N S C R I P T**

14                      **O F**

15          **P R O C E E D I N G S**

16      **CHANGE OF PLEA - FEBRUARY 9, 2011**

17               **Pages 1-33**

18

19

20

21

22   TAKEN AT: QUENTIN BURDICK UNITED STATES COURTHOUSE
              655 FIRST AVENUE NORTH
23            FARGO, NORTH DAKOTA  58102

24   BEFORE:  THE HONORABLE RALPH R. ERICKSON

25   COURT REPORTER:  KELLY A. KROKE

1                    **A P P E A R A N C E S**

2    **MR. NICHOLAS CHASE**              **COUNSEL FOR PLAINTIFF;**
     Office of US Attorney
3    655 1st Avenue North, Ste. 250
     Fargo, ND 58102
4

5    **MR. RICHARD HENDERSON**          **COUNSEL FOR DEFENDANT;**
     Attorney at Law
6    112 Roberts Street, Ste. 200
     Fargo, ND  58102
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        **P R O C E E D I N G S**

2            (FEBRUARY 9, 2011:  The following

3    proceedings commenced at 10:40 a.m.:)

4            THE COURT:  Good morning.  We'll go on the

5    record in a case entitled United States of America

6    versus Adenkunle Olufemi Adetiloye.  The record should

7    reflect that the defendant appears personally along with

8    his counsel, Mr. Henderson.  Mr. Chase appears on behalf

9    of the United States.

10           The United States has filed with the Court

11   an Information in lieu of the Indictment.  In the

12   Information the defendant is charged with one count of

13   mail fraud, in violation of 18, United States Code,

14   Section 1341 and 18, United States Code, Section 2.  In

15   addition the Information seeks the forfeiture of any

16   property, real or personal, which constitutes or is

17   derived from proceeds traceable to the offense pursuant

18   to 18, United States Code, Section 981(a)(1)(C),

19   982(a)(3), and 28, United States Code, Section 2461(c).

20           This is a Class B felony.  It carries a

21   maximum term of imprisonment of 30 years.  There is no

22   mandatory minimum jail sentence or prison sentence.  The

23   maximum allowable fine is $1 million, supervised release

24   not to exceed five years.  There is a $100 special

25   assessment which is mandatory and must be collected at

the time of sentencing if the defendant pleads guilty or is convicted.

Sir, do you understand the nature of the charge being brought against you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand the potential penalties that you face?

THE DEFENDANT:  Yes.

THE COURT:  All right.  You may be seated. You have certain constitutional rights.  It's my duty to inform you of those rights.  You have the right to remain silent.  If you choose to give up your right to remain silent anything that you say could later be used against you.

You have the right to be represented by a lawyer at every stage of these proceedings. Mr. Henderson is with you here today.  If you need to talk to him at any time you may.  If you need to talk to him in private if you let me know we'll make arrangements for that to happen.  Under the law of the United States you are presumed to be innocent; that is, you're presumed to be not guilty.  This presumption of innocence will stay with you through the whole trial. It may only be overcome in one of two ways.  The first is if you freely and voluntarily plead guilty, in which

1    case you will basically incriminate yourself.  The

2    second is if after a trial the finder of fact, and that

3    would usually be a jury, finds you guilty beyond a

4    reasonable doubt.

5            Now in order for you to be found guilty

6    beyond a reasonable doubt the finder of fact would have

7    to conclude that the government has established each of

8    the essential elements of the crime charged with proof

9    beyond a reasonable doubt.  And if the case is tried to

10   a jury the jury would have to reach this conclusion

11   unanimously before you could be convicted.  All jury

12   verdicts in federal court, whether guilty or not guilty,

13   must be unanimous.

14           You have the right to a trial by jury.  You

15   could waive your right to a trial by jury and if the

16   government consents and the Court approves the case

17   would then be tried to the judge without a jury.  That's

18   called a bench trial.  The fact that the case is tried

19   to the bench doesn't change the burden of proof.  It's

20   always on the United States government.  It's always to

21   proof beyond a reasonable doubt.  And they always have

22   to prove each of the essential elements of the crime

23   charged with proof beyond a reasonable doubt.

24           Now if the case is tried to a jury you have

25   the right to participate in the selection of that jury.

1   The way that that would happen is a group of potential

2   jurors would be randomly summoned into court.  Once they

3   got here they'd be placed under oath and then a smaller

4   group would be randomly called and placed in the jury

5   box.  Once they're in the jury box I'd start asking

6   questions trying to make sure that each of the jurors is

7   legally qualified to hear the case and that they don't

8   harbor any biases or prejudices such that they should

9   not be allowed to sit in this particular case.  When I'm

10  done asking my questions your lawyer will get to

11  question the jury.  When your lawyer gets done

12  questioning the jury the government's lawyer will

13  question the jury.

14          Now during all this questioning if at any

15  time any party believes that a juror is not qualified

16  they may raise a challenge for cause.  The reason they

17  call these for-cause challenges is because whoever

18  raises one must state the reason why they believe that

19  the juror is not qualified.  If I agree I will remove

20  the juror.  If I disagree I will overrule the challenge

21  and the juror will stay.

22          Eventually then we'll get to the point where

23  everyone's done asking their questions, all the

24  for-cause challenges will have been raised, I will have

25  ruled on all of them, and the only people left sitting

1   in the jury box are people that I think are legally

2   qualified to hear the case.

3          Once that happens each side will be given

4   peremptory challenges.  Now a peremptory challenge is a

5   challenge to remove a juror for any reason at all or no

6   reason and you don't ever have to explain.  The

7   government will get six peremptory challenges.  You will

8   get 10.  Once those 16 people are removed from the jury

9   we'll be left with a 12-person jury pool.  That panel of

10  jurors will be the jury that decides the case.

11         Now once the jury is selected I will

12  instruct them on some of the law that applies and

13  following that the United States will make an opening

14  statement.  After their opening statement your lawyer

15  may make an opening statement or he may decide to

16  reserve the opening statement till later in the trial.

17  After that the government will call witnesses to

18  testify.  You have the right to confront and to

19  cross-examine any witness who's called to testify

20  against you.  You have the right to object to the

21  evidence being offered against you consistent with the

22  law of evidence as it's applied in our courts.  It's my

23  duty as the judge to rule on all objections.

24         At some point the United States will have

25  presented all the evidence that they wish to present and

1    they will inform the Court that they rest.  Once the

2    United States has rested their case you have the right

3    to present a defense.  Now you're under no legal

4    obligation to present a defense.  That's because the

5    presumption of innocence alone is a sufficient reason to

6    find you not guilty if the government's failed to prove

7    the charge beyond a reasonable doubt.

8                But you might choose to present a defense

9    and if you do you have the right to call witnesses to

10   testify on your behalf.  You have the right to use the

11   subpoena powers of the United States to force witnesses

12   to attend, to testify and to produce any documents that

13   might be relevant to your defense.  You have the right

14   to testify yourself but you also have the right to

15   remain silent and free from self-incrimination.  This

16   means you're a witness in this case only if you choose

17   to be a witness.  If you choose to be a witness the

18   government will get to cross-examine you.  If you choose

19   not to be a witness no one may comment on your failure

20   to testify and no inference of guilt can be drawn from

21   that failure to testify and I will instruct the jury

22   that they can't discuss it in any way in arriving at

23   their verdict.

24                At some point you will have presented all

25   the evidence that you intend to present and the defense

1    will rest.  Once the defense has rested the United

2    States will have an opportunity for a rebuttal.  This is

3    not a chance to retry the whole case.  It is simply an

4    opportunity to respond to the claims raised by the

5    defense in their defense.  Usually the rebuttal is quite

6    short but whether it's short or long the same rules

7    apply.  If they call a witness you have the right to

8    cross-examine that witness.  You have the right to

9    object to the evidence being offered against you and I

10   still have the duty to rule.

11           At some point the government will rerest

12   their case and that will close the evidence.  Once all

13   the evidence is in I will further instruct the jury on

14   the law and following that the parties will get to make

15   closing arguments.  The government will go first, then

16   the defense, and finally the defense has once again the

17   right of rebuttal.  Now you may have noticed they're

18   getting to go first and last at every stage of this

19   trial.  It's not because I favor the government.  It's

20   because the long tradition in our law is whichever party

21   has the burden of proof they have the right to both open

22   and close the trial and each of its parts.

23           In any event when we're all done with that

24   I'll send the jury out to deliberate.  I'll tell them

25   that they must elect a foreperson, that they must

1   discuss the case.  They must decide what the facts are.

2   Once they find those facts they will be asked to apply

3   them to the law and in that way they should answer the

4   questions on the verdict form unanimously.  If they can

5   reach a unanimous verdict we'll receive it in open

6   court.  If they find you not guilty you'll walk out of

7   here a free person.  If they find you guilty beyond a

8   reasonable doubt then the case will go on the calendar

9   for a sentencing hearing, which will take place at some

10  later date in all probability.

11          You have the right to a speedy trial.  You

12  have the right to a public trial.  You have the right to

13  a reasonable delay to prepare your defense.  You have

14  the right to be admitted to a reasonable bail subject to

15  the Bail Reform Act and the Constitution of the United

16  States.

17          You should be aware that these -- this is a

18  felony charge.  If you plead guilty to it or are

19  convicted of it there are certain collateral

20  disabilities that will attach to you.  These are things

21  that happen whether they're part of the sentence or not.

22  For example, under the federal law of the United States

23  no person convicted of a federal felony may ever possess

24  a firearm or ammunition anywhere in the United States at

25  any time and there's no way to have that right restored,

1  at least not presently.

2          Now you should also be aware that the states

3  have laws that apply to previously convicted felons.  In

4  some states previously convicted felons can't vote.

5  They can't hold a public office.  They can't serve in a

6  position of public trust.  They can't serve on a jury.

7  They can't acquire certain types of jobs.  They can't

8  hold certain types of professional licenses.  They may

9  be required to register.  I don't know the law of all 50

10  states.  I can tell you this:  The burden will be on you

11  to know the law wherever you are and to follow it.  And

12  the law changes from state to state so you can't assume

13  because you can do something legally here that you'll be

14  able to do it legally in a different state.

15          Finally, if you're not a citizen of the

16  United States you should be aware that this is a crime

17  that could result in your removal from the country.  If

18  you are removed from the country you will not be allowed

19  to reapply for admission for some period of time, and

20  you will not be allowed to return to the country without

21  the written permission of the Secretary of Homeland

22  Security.  It may be that the permission of the

23  Secretary of Homeland Security is impossible to get or

24  difficult to get so you should be aware of that.  If you

25  are a citizen of the United States you obviously can't

1   be deported and you only should bear in mind that

2   international travel may be much more complicated

3   because most nations' states will not allow you into

4   their country without the written permission of some

5   government official, which could be expensive or time

6   consuming to get if it's possible to get it at all.

7           Sir, do you understand your rights as you've

8   been informed of them?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Do you have any questions about

11  any of them?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  I've been informed that you

14  intend to enter a plea here today.

15          MR. HENDERSON:  Your Honor, I think you

16  should advise him of his right to consult with the

17  council of the nation of --

18          THE COURT:  I'm sorry.  You should be aware

19  that under the law of the United States that if you are

20  not a citizen you have the right to consult with a

21  representative of the government of your citizenship.

22  This right is guaranteed to you by the protocols

23  established at the Vienna Conference which the United

24  States has signed.  You should also be aware that if you

25  enter a plea you will waive your right of consultation

1    so if you want to talk to somebody from the government

2    of your citizenship you should tell me that today.

3              THE DEFENDANT:  No, Your Honor.

4              THE COURT:  All right.  Could you please

5    stand and take an oath.

6              THE CLERK:  Please raise your right hand.

7              (Oath administered.)

8              THE COURT:  Could you state your full name

9    for the record, sir.

10             THE DEFENDANT:  Adenkunle Olufemi Adetiloye.

11             THE COURT:  And how old are you, sir?

12             THE DEFENDANT:  Forty years old.

13             THE COURT:  And how far have you gone in

14   school?

15             THE DEFENDANT:  Through college.

16             THE COURT:  Are you able to read and write

17   in English?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Have you had any difficulty

20   understanding these proceedings?

21             THE DEFENDANT:  No, Your Honor.

22             THE COURT:  Have you had any difficulty

23   communicating with your lawyer?

24             THE DEFENDANT:  No, Your Honor.

25             THE COURT:  Is English your first language

```
 1    or a second language for you?

 2              THE DEFENDANT:  Second language.

 3              THE COURT:  Do you have any problems with

 4    the English language?

 5              THE DEFENDANT:  No, Your Honor.

 6              THE COURT:  Have you ever been diagnosed as

 7    a person who is suffering from any sort of a mental

 8    illness?  And I mean that in its broadest sense so I

 9    would consider things like alcoholism, drug addiction,

10    depression, suicide attempts, bipolar syndrome,

11    schizophrenia, panic anxiety disorder,

12    obsessive-compulsive disorder, agoraphobia, basically

13    anything?

14              THE DEFENDANT:  No, Your Honor.

15              THE COURT:  How's your physical health?

16              THE DEFENDANT:  Very well.

17              THE COURT:  Are you currently taking any

18    medications for any reason?

19              THE DEFENDANT:  No, Your Honor.

20              THE COURT:  Have you consumed any alcohol or

21    drugs in the past 48 hours?

22              THE DEFENDANT:  No, Your Honor.

23              THE COURT:  Have you had a chance to discuss

24    this case with your lawyer?

25              THE DEFENDANT:  Yes, Your Honor.
```

1           THE COURT:  Mr. Henderson -- wait a minute,

2    I should start with this.  Are you satisfied with the

3    representation that you've received from your lawyer?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  Mr. Henderson, have you seen

6    anything that would cause you to question your client's

7    competence?

8           MR. HENDERSON:  No, Your Honor.

9           THE COURT:  It appears to the Court that the

10   defendant's answers are appropriate, that they are

11   responsive, that he is in a position to assist his

12   counsel in his own defense and that he understands the

13   proceedings against him.  He is, therefore, legally

14   competent to proceed.

15           Mr. Henderson, my file reflects that this is

16   an open plea; is that true?

17           MR. HENDERSON:  That's correct, Your Honor.

18           THE COURT:  All right.  Mr. -- is it --

19           MR. HENDERSON:  Adetiloye, Your Honor.

20           THE COURT:  Adetiloye, I'm sorry.

21   Mr. Adetiloye, basically what I just asked your lawyer

22   was whether or not there is any agreement with the

23   United States and he has told me that you have no

24   agreement with the United States other than the

25   agreement to file the Information in lieu of the

1    Indictment; is that true?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Okay.  And the government's

4    performed whatever they've agreed to do in your case by

5    filing the Information; is that true?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  When the original Indictment was

8    handed down, did you have a chance to review it with

9    your lawyer?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Did you discuss all of the

12   charges that were then pending against you?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  And did you discuss the possible

15   penalties that you might face if you were convicted or

16   plead guilty to those charges?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  And at some point did your

19   lawyer and Mr. Chase on behalf of the United States have

20   some negotiations about trying to reach an agreement on

21   an Information as opposed to that Indictment.

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  All right.  And when the

24   Information was -- and you know what an Information is.

25   That's a formal charge brought by the United States

```
 1   attorney rather than a grand jury, okay?  Do you
 2   understand that?
 3                THE DEFENDANT:  Yes.
 4                THE COURT:  When they brought this new
 5   charge against you, did you have a chance to review it
 6   with Mr. Henderson?
 7                THE DEFENDANT:  Yes, Your Honor.
 8                THE COURT:  Did you discuss what the meaning
 9   of this Information was?
10                THE DEFENDANT:  Yes, Your Honor.
11                THE COURT:  And did you discuss that you had
12   the right to proceed to a jury trial if you wished?
13                THE DEFENDANT:  Yes, Your Honor.
14                THE COURT:  And you had the right to enter a
15   plea if you wished?
16                THE DEFENDANT:  Yes, Your Honor.
17                THE COURT:  And did you discuss with your
18   lawyer the benefits and the risks of both approaches?
19                THE DEFENDANT:  Yes, Your Honor.
20                THE COURT:  Did Mr. Henderson basically go
21   through the Information and answer all of your
22   questions?
23                THE DEFENDANT:  Yes, Your Honor.
24                THE COURT:  And when you were done with
25   those discussions, did you feel like you fully
```

1   understood what your options were?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  And do you understand that the

4   decision that you make in this case is yours?  Your

5   lawyer might advise you to do something but in the end

6   you don't have to do what your lawyer's told you.  You

7   get to decide for yourself what you want to do with your

8   case.  Do you understand that?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And are you -- at this point

11  have you made a decision as to what you would like to

12  do?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Can you tell me what it is you

15  want to do today?

16          THE DEFENDANT:  To plead guilty to the mail

17  fraud.

18          THE COURT:  Do you intend as well to admit

19  to the forfeiture provision?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Okay.  Do you have any questions

22  at all about these proceedings here today?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  All right.  Mr. Adetiloye, you

25  have the right to have the information read to you

1    today.  You could waive the formal reading if you wish.

2    It's entirely up to you.

3                    THE DEFENDANT:  I'll waive it.

4                    THE COURT:  All right.  Are you prepared at

5    this time to enter a plea to the charge?

6                    THE DEFENDANT:  Yes, Your Honor.

7                    MR. CHASE:  Your Honor, I apologize for

8    interrupting at this point.  I do know that in my

9    opinion the Information reflects, as you correctly

10   stated and the defendant stated, that there was some

11   negotiations that the Information essentially is the

12   charges in the Indictment.  Nonetheless I know that the

13   defendant to the extent there is -- to the extent that

14   he has a right to have the information taken to the

15   grand jury, I know that he has waived like the right to

16   have that taken to the grand jury.

17                   THE COURT:  I think it's a lesser

18   included -- or it is an included offense in the

19   Indictment, right?

20                   MR. HENDERSON:  The Indictment did include I

21   think three counts of mail fraud.

22                   THE COURT:  Right.  And it seems like the

23   facts are the same as I read them.  Is that the truth?

24                   MR. CHASE:  As far as I'm concerned they

25   are, Your Honor.  I just wanted to --

1              THE COURT:  You just want me to ask about

2       that?  Sorry about talking over him.

3              MR. CHASE:  Sorry, Your Honor.

4              THE COURT:  Mr. Adetiloye, you have the

5       right to have these charges considered by the grand jury

6       before you move forward.  Now the grand jury's already

7       indicted you.  What they do is -- well, first of all,

8       it's a group of people not fewer than 15 nor more than

9       23.  They review the evidence and they decide whether or

10      not charges should be brought.  And in order to do that

11      the question that they're asked is do they find probable

12      cause to believe that a crime has been committed and do

13      they find probable cause that you are the person who

14      committed that offense.

15              In any event you could ask that this matter

16      be re-presented to the grand jury or you could waive

17      further proceedings before the grand jury.  You should

18      be aware that if the grand jury reviews the evidence and

19      they decide that there's insufficient evidence to move

20      forward they would return a no true bill, which would

21      have the effect of dismissing the charge against you.

22      If they review the evidence and they find that there is

23      probable cause in all probability the Information -- the

24      Indictment that they return would look similar to the

25      Information.  Do you understand what a grand jury is?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you want this case resubmitted to the grand jury or do you wish to move forward today?

THE DEFENDANT:  I'll go ahead today, Your Honor.

THE COURT:  All right.  Now the Information that's brought by the United States attorney charges you with mail fraud.  Essentially it says that you participated in a scheme to defraud financial institutions out of money with knowledge that the scheme was fraudulent.  It basically involved assuming identities of unsuspecting persons and using the personal information that you had surreptitiously obtained to receive credit by opening credit card accounts and other bank and credit card accounts, both Visa and others, in their names and that once that happened you submitted charges for various things, including collection of debts and locating delinquent debtors.  The information that you obtained then was used to obtain more than one credit card by posing as another person without that person's knowledge.  It's alleged that this conduct began in March 2004 and it ended sometime in August of 2007.  It is alleged further that this conduct occurred in the District of North

1    Dakota.

2              It is specifically alleged that you,

3    Adenkunle Olufemi Adetiloye, for the purpose of

4    executing and attempting to execute the aforementioned

5    scheme to defraud and to obtain money and other items of

6    value by means of false and fraudulent pretenses,

7    representations and promises, did knowingly cause to be

8    delivered by the United States Postal Service, and other

9    commercial interstate carriers, according to the

10   direction thereon balance transfer checks, bank and

11   credit cards, and other items of value from Fargo, North

12   Dakota and elsewhere to addresses that were directed to

13   be delivered by one or more of the participants in this

14   scheme and which were controlled by one or more of the

15   participants in this scheme.  This is a violation of 18,

16   United States Code, Section 1341 and 18, United States

17   Code, Section 2.  To that charge how do you plead?

18   Guilty or not guilty?

19              THE DEFENDANT:  Guilty, Your Honor.

20              THE COURT:  All right.  And do you

21   understand -- in addition there's a forfeiture

22   allegation in which the United States seeks the

23   forfeiture pursuant to 18, United States Code, Sections

24   981, 982 and 28, United States Code, Section 2461 all

25   right, title and interest in any property, real or

 1   personal, which constitutes or is derived from the

 2   proceeds traceable to the violations of 18, United

 3   States Code, Section 1341; and, further, that if these

 4   assets as a result of any act or omission on the part of

 5   the defendant cannot be located upon exercise of due

 6   diligence; (b) has been transferred to, sold to, or

 7   deposited with a third person; (c) have been moved

 8   beyond the jurisdiction of the Court; (d), have been

 9   substantially diminished in value; (e) have been

10   commingled with other property that can't be easily or

11   readily subdivided that substitute property may be

12   sought by the United States and forfeited.  To this

13   forfeiture allegation do you admit or deny?

14          THE DEFENDANT:  Admit.

15          THE COURT:  Do you understand that by

16   entering this plea of guilty you're giving up your right

17   to a jury trial?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Do you understand that you're

20   giving up your right to a trial of any kind?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Do you understand you're giving

23   up your right to confront and to cross-examine the

24   witnesses that the government might call to testify

25   against you?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Do you understand you're giving

3    up your right to call witnesses on your own behalf?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Do you understand that you're

6    giving up your right to be a witness yourself and your

7    right to be free from self-incrimination?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Do you understand you're giving

10   up your right to have the United States prove beyond a

11   reasonable doubt that you're guilty of this crime?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  And do you understand that

14   you're giving up your right to a unanimous jury verdict

15   before you could be convicted?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Has anyone made any threat or

18   promised you anything in order to force you into this

19   plea?

20         THE DEFENDANT:  No, Your Honor.

21         THE COURT:  Is this plea a matter of your

22   own free will?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  And you understand that by

25   making the forfeiture admission that you're giving up

1    your right to a hearing on whether or not the property

2    should be forfeited?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  All right.  The Court finds that

5    the plea and admissions are freely and voluntarily and

6    knowingly made.  Is there a factual basis?

7              MR. CHASE:  Your Honor, before I go through

8    my factual basis, it's my understanding through talking

9    to Mr. Henderson that the defendant is not likely to

10   agree to everything in my factual basis.  I think that

11   based on my conversations with Mr. Henderson the

12   information itself contains a factual basis for this

13   charge and I do not expect the defendant to agree to

14   anything really beyond what is stated in the

15   Information.

16              Nonetheless, Your Honor, to give the Court

17   an explanation of our -- a summary of the evidence that

18   we would expect to show at trial, Your Honor, the state

19   of Delaware Division of Corporations received an

20   application by fax March 24th, 2004 to incorporate

21   Syspac and that act, Your Honor, really was sort of the

22   beginning of the -- of the scheme to defraud in this

23   case.

24              Later on April 19th the -- there was a

25   request for a business license for this corporation of

1   Syspac.  The address that was used on the Syspac

2   business license and incorporation application was

3   actually an incorporator in the state of Delaware.  The

4   name of the president of Syspac was Donald Douglas, also

5   listed John Moran as the director.

6           This business license was in fact issued on

7   April 26th, 2004.  It listed as the nature of its

8   business as a collection agency locating delinquent

9   debtors.  The license was renewed.  One time it was

10  renewed for a period of three years on June 13th.  The

11  fee on this renewal was paid by a Visa credit card in

12  the name of Ervin Hinds and was sent this credit card

13  payment by an IP address assigned to Rogers Cable

14  Provider, an internet service provider in Canada.

15  The -- this business license was then used to apply for

16  access to both Choice Point and Lexus-Nexus Accurate.

17          At some point the investigation in this

18  started.  The investigator at the time contacted an

19  investigator in the Department of Revenue in the state

20  of Delaware.  They sent a ruse letter to the person

21  purporting to be Donald Douglas stating that they were

22  intending to suspend the license because the name on

23  the -- the person who paid for the license renewal,

24  Ervin Hinds, was not listed as an officer of the company

25  and that the enclosed documents should be returned with

1    this.

2            On July 10th the investigator at the

3    Department of Revenue in Delaware received a return

4    package, Fed Ex package, from somebody purporting to be

5    Donald Douglas.  Fed Ex can confirm that it did come

6    from the Toronto, Ontario area.  Inside the Fed Ex

7    package was a smaller envelope containing the ruse

8    letter and document to be completed by Donald Douglas.

9    A fingerprint was taken from that ruse envelope, the

10   inner envelope.  That fingerprint has matched to the

11   defendant's fingerprints that are in his immigration

12   file and fingerprints that were taken at the time of his

13   arrest.  The incorporator in that -- for the -- for

14   the -- for Syspac was Corporations USA.  It was told to

15   forward all mail from Corporations -- that Corporations

16   USA received on Syspac's behalf.  It was told to forward

17   all mail to an address at 2112 Danforth in Toronto.

18           The following -- what also occurred, Your

19   Honor, is another application -- at some point the --

20   the Lexus-Nexus account was suspended.  Fraud was

21   suspected.  There was a new application for -- for

22   access in the Lexus-Nexus database under Comet

23   Consultants, a new corporation that was also

24   incorporated in Delaware.  This incorporation license

25   was paid with the same Ervin Hinds credit card that was

1    used to renew the Syspac license.

2              The people at Choice Point have established

3    several things.  First of all that they did in fact get

4    an application from Donald Douglas containing the Syspac

5    business license.  It contained an address for the

6    application of 2802B Philadelphia Pike.  That is what I

7    will refer to in this as a CMRA.  It's essentially a

8    commercial mailbox.  Most people would be familiar with

9    Mailboxes Etc.  It is an address that is run by Gat Pac.

10             So that address was used as Syspac's address

11   in their application at Choice Point.  The mail that was

12   received that was sent from Choice Point was sent to

13   that Gat Pac address.  There were thousands of searches

14   conducted on Choice Point of obtaining Social Security

15   numbers and names and other identifying characteristics.

16   The -- from this it's been determined that 181 financial

17   accounts were opened using the searches from Choice

18   Point during this time period, which would be 179

19   different people.  Those people include Michael

20   Krawcysky, Donald Douglas and Ervin Hinds.

21             Documents were obtained from Gat Pac which

22   again was the CMRA used to receive mail from Choice

23   Point addressed to Syspac Financial Services and Donald

24   Douglas.  The documents included a document purporting

25   to be an application from Michael Krawcysky.  That

1    application had a fingerprint on it that again matched

2    the defendant's.  It had a driver's license and

3    corporate ID.  Driver's license purported to be Michael

4    Krawcysky.  It's been confirmed that that driver's

5    license was counterfeit and also corporate ID from

6    Ebanin Inc.  That corporate ID was also confirmed to be

7    counterfeit.  The -- and both the driver's license and

8    the ID card also had the defendant's fingerprints on it.

9         Gat Pac said that it did not receive any

10   mail addressed to Krawcysky.  It only received mail from

11   Choice Point addressed to Syspac and Donald Douglas.

12   Lexus-Nexus, the evidence from there shows again an

13   original Syspac business license and Donald Douglas.  It

14   provided the same numbers as the Choice Points.  There

15   were a total of more than 10,000 searches performed,

16   including searches that would be people at work that

17   allows somebody to search a work place and see all of

18   the people who work there.  In all it appears that about

19   58 -- I'm sorry, 66 financial accounts were opened from

20   that -- from those searches, 58 of which were also

21   searches done on Syspac's Choice Point.

22        Your Honor, in all the -- I mentioned a

23   little earlier that there was also a later -- a later

24   license obtained under Comet, Comet Incorporated, for

25   the -- for Lexus-Nexus, the incorporator was for that

1    was Spiegel and Utrera.  They too had a forwarding

2    address of 2112 Danforth.

3            Your Honor, this entire scheme -- in the end

4    there were thousands of searches.  There were hundreds

5    of accounts opened.  There were over 100 -- I believe

6    there were just over 100 different CMRAs, which is those

7    mailboxes, those commercial mailboxes.  They were all

8    opened, all confirmed fraudulently opened using fake IDs

9    and fake notary stamps and all of which were forwarded

10   to areas in Toronto from the records that we were able

11   to receive.  Some of the CMRAs don't exist or don't have

12   records.  From the ones we do all of them were sent to

13   the address at 2112 Danforth or to 2372 Weston Road or

14   to 6975 Meadowvale Road to these primary addresses in

15   and around Toronto, Ontario.

16           At some point the Canadian officials agreed

17   to surveil the 2112 Danforth address and at that time it

18   was the defendant who approached that place, obtained

19   the mail from that account and the Canadian officers

20   arrested him at that time at the 2112 Danforth address

21   after he had gotten the mail from that post office box.

22           At the time when he was arrested he was also

23   arrested with the key for No. 179, which is the 6975

24   Meadowvale Road CMRA.  He also had in his wallet a Visa

25   credit card under the name of Donald Douglas.  He had

1   various letters with credit card information for various

2   individuals that have also been confirmed to be

3   counterfeit and in his vehicle was also found a Rogers

4   Cable bill.

5           Finally, Your Honor, evidence was obtained

6   from j2 Communications.  One or more of the telephone

7   numbers that were used during this matter were assigned

8   to j2 Communications.  It is a commercial provider of

9   telephone and fax numbers.  It then forwards telephone

10  voice mails and fax numbers and can assign area codes

11  all over the United States.  From March to August of

12  2007 the -- there were a total of 51 service telephone

13  numbers, of which there were 316 faxes and voice mails

14  in that time.  Some of these numbers are connected to

15  the CMRAs in this case, and it was opened and paid for

16  with a fraudulently obtained credit card of Craig

17  Leymaster, also associated in this scheme to defraud.

18          THE COURT:  Mr. Henderson, what does your

19  client -- what's his position on the factual basis?

20          MR. HENDERSON:  Your Honor, we do not admit

21  that Mr. Adetiloye had complete knowledge of all details

22  of the scheme, and we certainly don't admit that he was

23  involved in or a participant in every aspect of the

24  scheme as it was described by Mr. Chase.  But we do

25  admit that sometime during the time period in the

1   Information between March of '04 and August of '07 that

2   he became aware that there was a scheme to defraud banks

3   out of money by the means of making false statements or

4   false representations.  And we agree that he

5   participated in the scheme by causing or -- by either

6   mailing or causing to be mailed, either in the U.S. mail

7   or by a commercial carrier, Fed Ex or UPS, documents

8   that were necessary to carry out aspects of the scheme.

9   He knew that this was -- that this was a fraudulent

10  scheme.  He knowingly participated in the scheme.

11          THE COURT:  Thank you.  Mr. Adetiloye, do

12  you agree with what your lawyer just told me?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  The Court finds there is a

15  factual basis adequate to sustain the plea.  We'll go

16  ahead and set this matter on for a sentencing hearing.

17  We'll set it for Tuesday, April 26th, 2011 at 9 o'clock.

18  We're led to believe that this sentencing could take the

19  better part of the day; is that true?

20          MR. CHASE:  I think that's right, Your

21  Honor.

22          MR. HENDERSON:  I agree, Your Honor.

23          THE COURT:  All right.  So we'll set it for

24  the whole day April the 26th, 2011.  The Court will

25  direct that a presentence report be prepared, that the

```
 1    original be lodged -- or filed with the Court, that
 2    copies be made available to the parties.  Any
 3    objections, corrections or exceptions should be raised
 4    according to the local practice and subject to the rule.
 5              Anything further, from the United States?
 6              MR. CHASE:  No, Your Honor.
 7              THE COURT:  From the defense?
 8              MR. HENDERSON:  Your Honor, I have a written
 9    waiver of the Indictment.  Should I file it at this
10    time?
11              THE COURT:  Go ahead and file it.  The Court
12    has found that it's been a knowing and voluntary waiver.
13              MR. HENDERSON:  (Indicating.)
14              THE COURT:  We'll stand in recess in this
15    matter.
16              (Adjourned at 11:25 a.m.)
17
18
19
20
21
22
23
24
25
```

1              **CERTIFICATE OF REPORTER**

2          I, Kelly A. Kroke, a duly appointed

3   Registered Professional Reporter;

4          DO HEREBY CERTIFY that I reported in

5   shorthand the foregoing proceedings had and made a

6   record at the time and place indicated.

7          I DO HEREBY FURTHER CERTIFY that the

8   foregoing and attached (33) typewritten pages contain an

9   accurate transcript of my shorthand notes then and there

10  taken.

11          Dated this 2nd day of June, 2011.

12

13

14

15

16

17          /s/ Kelly A. Kroke
            KELLY A. KROKE - RPR, RMR
18          United States District Court Reporter
            District of North Dakota
19          Southeastern Division

20

21

22

23

24

25