UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NORTH DAKOTA

SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 3:08-cr-28 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **DEFENDANT'S SENTENCING** |
| ADEKUNLE OLUFEMI ADETILOYE, | ) | **MEMORANDUM** |
| | ) | |
| Defendant. | ) | |
| | ) | |

On February 9, 2011, Adekunle Adetiloye pled guilty to one count of Mail Fraud. At his change of plea hearing, he admitted participating in a mail fraud scheme involving fraudulent credit card accounts. Mr. Adetiloye has since made a number of objections to the Presentence Investigation Report in this case, because he does not admit to the detailed factual allegations contained in the Report. He expects the government to present evidence in support of those allegations at the sentencing hearing. The government will not be able to prove by a preponderance of the evidence that he is responsible for all of the offense conduct summarized in the Report. The purpose of this memorandum is to address pertinent guidelines sentencing factors. Mr. Adetiloye may request leave to file a supplemental sentencing memorandum after the hearing is finished.

Mr. Adetiloye objected to three specific offense characteristics listed in the Report[1]: the amount of loss at paragraph 44, the number of victims at paragraph 45, and his role in the offense

---

[1] References to the Presentence Investigation Report are to the draft report dated March 17, 2011.

at paragraph 49. The government has also objected to the adjustment for acceptance of responsibility at paragraph 53 of the Report. This memorandum will address these four sentencing factors.

    1.    Amount of Loss.

Two issues will be critical to the Court's determination of the amount of loss: the proper definition of "loss" under the Sentencing Guidelines and the time that the loss in question was incurred.

The Guidelines define loss as "the greater of actual loss or intended loss." Actual loss means the reasonably foreseeable pecuniary harm that resulted from the offense. Intended loss means the pecuniary harm that was intended to result from the offense. The government has proposed three measures of loss: actual loss, attempted loss, and the aggregate credit limit of the fraudulent accounts. The government argues that the aggregate limit is the appropriate measure of loss on the basis that attempted loss would minimize the intent of the scheme. Mr. Adetiloye responds that the government's method would overstate the amount of loss by equating intended loss with potential loss. Based on the experience of the participants in this fraud, it would have been totally unrealistic for them to expect that they would have access to the aggregate credit limit under all of the fraudulent accounts. Therefore, this would not be a reasonably foreseeable amount of loss and would not be an accurate reflection of the intended loss. Several courts have ruled that intended loss should not be equated with potential or possible loss. *United States v. Geevers*, 226 F.3d 186, 192 (3rd Cir. 2000); *United States v. Kopp*, 951 F.2d 521, 529 (3rd Cir. 1992) (the fraud guideline has never endorsed sentencing based on the worst case scenario

*potential* loss). Accordingly, Mr. Adetiloye submits that the appropriate measure of loss in this case is the greater of the actual loss incurred, or the actual loss plus attempted charges.

The second issue is the time the loss was incurred. The government's summary exhibits include losses on accounts that were opened as early as 1987 and that continued after Mr. Adetiloye was taken into custody by Canadian authorities on August 24, 2009. It is clearly established that a defendant's relevant conduct does not include losses caused by other participants in the scheme before the defendant's participation began or after his participation ended. *United States v. Oseby*, 148 F.3d 1016, 1026 (8th Cir. 1998); *United States v. Bad Wound*, 203 F.3d 1072, 1077 (8th Cir. 2000).

There is no attempt in either the Presentence Investigation Report or the government's sentencing memorandum to establish the time of Mr. Adetiloye's participation in the fraudulent scheme. Likewise, neither the government nor the probation officer calculates an amount of loss limited to any specific time period. Therefore, at the sentencing hearing, the government will have the burden of proving the time period of Mr. Adetiloye's participation for purposes of calculating the amount of loss attributable to his participation.

2. Number of victims.

Prior to November 1, 2009, the Guidelines defined a "victim" as any person who sustained any part of the actual loss calculated under U.S.S.G. § 2B1.1(b)(1). U.S.S.G. § 2B1.1, Application Note 1. Most of the circuits, including the Eighth Circuit, interpreted this language to mean that only persons who sustained actual financial loss could be counted as "victims" under U.S.S.G. § 2B1.1(b)(2). *United States v. Miller*, 588 F.3d 560, 567-68 (8th Cir. 2009);

*United States v. Kennedy*, 554 F.3d 415 (3rd Cir. 2009); *United States v. Orr*, 567 F.3d 610 (10th Cir. 2009); *United States v. Connor*, 537 F.3d 480 (5th Cir. 2008); *United States v. Abiodun*, 536 F.3d 162 (2nd Cir. 2008); *United States v. Yagar*, 404 F.3d 967 (6th Cir. 2005).

The Guidelines definition was amended in 2009 for cases involving "means of identification." In such cases, the definition of a victim was expanded to include any individual whose means of identification was used unlawfully or without authority. U.S.S.G. § 2B1.1, Application Note 4(E). This is significant for two reasons. First, it creates an inference that such individuals did not meet the definition of victims prior to the Amendment. Second, it is undisputed that Mr. Adetiloye was in custody of Canadian authorities on August 24, 2009. There is no evidence that he continued to participate in the scheme after that date, or after the effective date of the Amendment.

      3.      Role in the offense.

Mr. Adetiloye objected to the four-level enhancement under U.S.S.G. § 3B1.1(a) because there is no evidence that he was an organizer or leader of the scheme. The government claims that he was an organizer because he supposedly handled all contacts with state corporate agencies and with commercial data providers. Government Sentencing Memorandum at p. 28. Mr. Adetiloye expects that evidence at the sentencing hearing will show that all elements of the scheme, including the false corporations, commercial mailboxes, and access to data aggregators like ChoicePoint, were in place and functioning before he became involved. Mr. Adetiloye may have maintained or even expanded some elements of the scheme, but all of the basics were organized and put into place by someone else.

The government also claims Mr. Adetiloye was a leader of the scheme because he supposedly directed the actions of Clement Akanade. The government's position in this regard is based entirely on the self-serving testimony of Mr. Akanade. Mr. Adetiloye expects evidence at the hearing to show that Mr. Akanade was a high-level participant in the scheme. He may be one of the organizers, but at the very least, he operated independently of Mr. Adetiloye. There will not be reliable evidence to establish that Mr. Adetiloye directed the activities of Mr. Akanade.

4.	Acceptance of Responsibility.

The government objects to giving Mr. Adetiloye credit for acceptance of responsibility on the basis that he is not admitted to the government's version of his relevant conduct. However, it is clear from the Application Notes to U.S.S.G. § 3E1.1 that a defendant is not required to affirmatively admit relevant conduct beyond the offense of conviction in order to qualify for acceptance of responsibility. U.S.S.G. § 3E1.1, Application Note 1(a).

In this case, Mr. Adetiloye pled guilty to a one-count Information after extensive negotiation with the government. The government is well aware that Mr. Adetiloye's plea saved significant prosecutorial and investigative resources. If Mr. Adetiloye put the government to its burden of proof at trial, it would have been required to engage in intensive trial preparation, witness interviews, and additional investigation. It would have been required to prove every element of the scheme, beyond a reasonable doubt, with evidence admissible under the Federal Rules of Evidence. Considering the scope of the alleged scheme, the trial could easily have consumed two weeks or more.

When he entered his plea, Mr. Adetiloye was aware that the Rules of Evidence do not apply at sentencing, and that the government would be able to prove its case through hearsay testimony and summaries. The savings to the government is clearly demonstrated by the fact that the Court has only scheduled one day for the sentencing hearing.

Application Note 3 to U.S.S.G. § 3E1.1 is directly applicable to this situation. That note provides that entry of a plea of guilty prior to trial, truthfully admitting conduct comprising the offense of conviction, and not falsely denying additional relevant conduct constitutes significant evidence of acceptance of responsibility. Mr. Adetiloye has not denied his relevant conduct; however, he has exercised his right to put the government to its proof at a sentencing hearing. This is not a basis to deny him credit for acceptance.

The government also claims that Mr. Adetiloye obstructed justice by deliberately altering his handwriting during completion of a court-ordered handwriting sample. Government's Sentencing Memorandum at pp. 2 and 29. Mr. Adetiloye responds by stating that he completed many pages of handwriting samples as directed by two FBI agents who observed the entire process. The sample was completed and submitted to the government in July 2010, more than six months before the change of plea hearing. Mr. Adetiloye accepted responsibility at his change of plea hearing, and the government points to no conduct since that date that is obstructive or an abuse of his rights.

## CONCLUSION

Defendant Adekunle Adetiloye respectfully submits that his objections to the Presentence Investigation Report are well-founded and represent legitimate questions of fact to be resolved by

the Court at the sentencing hearing.  He reserves his right to file a supplemental sentencing memorandum upon completion of the hearing, to specifically address evidence presented by the government.

    Dated this 22nd day of August, 2011.

        Respectfully submitted,

        NEIL FULTON
        Federal Public Defender
        By:

         */s/ Richard Henderson*
        Richard Henderson (ND# 04177)
        Assistant Federal Public Defender
        Attorney for Defendant
        Office of the Federal Public Defender
        Districts of South Dakota and North Dakota
        Federal Square, Second Floor
        112 Roberts Street North, Suite 200
        Fargo, ND 58102
        Telephone: 701-239-5111; Facsimile:  701-239-5098
        filinguser_SDND@fd.org

CERTIFICATE OF SERVICE
===

I hereby certify that on August 22, 2011, the following document(s):

**Defendant's Sentencing Memorandum**

were filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

**Nicholas Chase**
**nick.chase@usdoj.gov**

I further certify that copy of the foregoing documents and the Notice of Electronic Filing will be mailed first class mail, postage paid, to the following non-ECF participants:

Dated: August 22, 2011.

>  */s/ Richard Henderson*
>  Assistant Federal Public Defender